# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION


| | | |
|---|---|---|
| Nick Dolbin, | ) | CASE NO.    1:17 CV 460 |
| | ) | |
| Plaintiff | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Officer Miller, *et al.,* | ) | <u>Memorandum of Opinion and Order</u> |
| | ) | |
| Defendants. | ) | |


## <u>INTRODUCTION</u>

This matter is before the Court upon Defendants Officer Miller, Officer Whelan, and the

City of Strongsville's Motion for Summary Judgment Under Fed. R. Civ. P. 56 (Doc. 10). This is

a civil rights dispute. For the following reasons, Defendants' motion is GRANTED IN PART

and DENIED IN PART.

## <u>FACTS</u>

On February 2, 2015, Plaintiff Nick Dolbin's daughter M.K.[1] placed a 911 call with the

Strongsville Police Department. M.K. informed the dispatcher that her father was threatening to

---

[1]      M.K.'s name will be abbreviated because she is a minor.

harm himself with a gun and was barricaded in his closet. (Miller Dep. at 16, 28). Dispatch radioed this information to the police officers. No other crime was reported. (*Id.*)

Officers Miller, Whelan, and O'Sullivan responded to the call. Plaintiff was aware that a 911 call had been placed and went to wait for the police by his front door inside the house. (Dolbin Dep. at 53-54). When he saw multiple police cars coming, he placed his hands on the glass area of the door so the officers could see his hands. (*Id.* at 56). Officer Whelan had his gun drawn and pointed at the door. (Whelan Dep. at 14). As Plaintiff opened the door, Officer Whelan kicked it in. Plaintiff was calm, not animated, wearing a t-shirt and shorts, and did not have a weapon. (*Id.* at 15; Miller Dep. at 22, 29). Plaintiff told the officers that everything was fine and that "[t]he call you are here for is done." Seeing that Plaintiff was not a threat, Whelan reholstered his weapon. (Whelan Dep. at 22). Plaintiff attempted to close the door, but Whelan stopped him, telling him that the police needed to investigate the nature of the call. (*Id.* at 15). Plaintiff informed the officers that he would not answer any questions and requested a supervisor. (*Id.* at 19, 20). Plaintiff may have also mentioned that he is a police officer at this point. (*Id.* at 20).

Sergeant O'Deens arrived soon thereafter, and Plaintiff asked to speak with him. Whelan would not allow O'Deens to enter the house alone, so both men went inside to speak with Plaintiff. (Dolbin Dep. at 60). Officer Miller went back to his car and waited. Plaintiff discussed "the situation" with O'Deens and told him about a comment he had made to his wife earlier that day. (*Id.*). Although Plaintiff did not clarify what "comment" he was referring to, the Court assumes that he was referring to having told his wife, "[I]f I ended my life today, my death would be on your conscience." (*Id.* at 49). While he was speaking with the officers, Dolbin

repeatedly stated that there were no problems and that everything was fine. (Whelan Dep. at 21). Plaintiff could overhear O'Deens's telephone call to the police station reporting on the incident. O'Deens reported that "there is nothing wrong with this guy. His eyes are not bloodshot. He's not sweating. He's not raising his voice. He is not angry. I don't think anything is really going on." (Dolbin Dep. at 60).

After speaking with Plaintiff for about 35 minutes, O'Deens asked whether Plaintiff would have a problem if they took him for an evaluation. Plaintiff responded, "I'm leaving here, so it doesn't really make a difference. I'm going to respect you guys. If you feel that is what needs to be done." (*Id.* at 62). O'Deens then told Plaintiff that they were taking him for an evaluation. (*Id.*). He was handcuffed and placed in Officer Miller's cruiser. (*Id.*).

Miller began transporting Plaintiff to Oak View for an evaluation. As he was being transported, however, Miller received a call from O'Deens, who told Miller to take Plaintiff to the police department for booking. Miller did not know why Plaintiff was being arrested. (Miller Dep. at 34-35). Miller told Plaintiff that he was being taken to the police department for processing, which Plaintiff understood meant that he was under arrest. (Dolbin Tr. at 64-65).

At some point on February 3, Miller prepared an investigative report for the incident. The report states that M.K. and Plaintiff's wife, Kathleen Dolbin, left the house after M.K. called 911 and went to the police station. They were speaking with Officers Mendise, Knipp, and Murphy at the police department while the other officers were speaking with Plaintiff at his home. M.K. and Kathleen told the officers that Kathleen and Plaintiff had been involved in a serious altercation on February 1. M.K. stated that her parents were arguing and that she observed her father kick her mother in the face and knock her down the basement stairs. Kathleen stated that Plaintiff had

choked her and put a knife in her face, threatening her. He then sat on the couch, pointing a gun to his chest, and told them that he was going to commit a murder suicide. Plaintiff then left the residence for several hours. The next day, he apologized and told them that he was going to take his own life. Later, they claimed to have observed Plaintiff lying on his back on the garage floor, holding the gun to his side. He then went into the master bedroom and secured a belt around his neck. At this point, M.K. placed the 911 call. M.K. told the officers that she believed Plaintiff would kill her and her mother if they returned to the house.

Miller met with Kathleen after he returned to the police station on February 2. (Miller Dep. at 41). At the police station, Miller noticed no physical injuries on Kathleen, although he did note some redness on her nose. (*Id.* at 43). Miller filed criminal charges against Plaintiff for domestic violence based on the information that M.K. and Kathleen had provided to police. M.K. recanted her allegations about Plaintiff "shortly after" making her statements, but nothing in the record indicates exactly when this occurred. (M.K. Dec. ¶5).

Plaintiff was detained until after his arraignment and denied all contact with his daughter for 261 days. He was tried in two separate criminal trials in the Berea Municipal Court. He was ultimately found not guilty of all of the criminal charges, including any claim of domestic violence.

Plaintiff filed this lawsuit against Officers Whelan and Miller and the City of Strongsville in the Cuyahoga County Common Pleas Court. He brought seven claims for relief: a § 1983 claim against the officers for violations of his right to be free from unreasonable searches and seizures, a failure to train claim against the City of Strongsville, a federal abuse of process clam, a federal malicious prosecution claim, and various state-law claims. Defendants timely removed

the case to this Court. Defendants now move for summary judgment on all of Plaintiff's claims. Plaintiff opposes Defendants' motion. For the following reasons, Defendants' motion is granted in part and denied in part.

## SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting summary judgment remain unchanged" and the amendment "will not affect continuing development of the decisional law construing and applying" the standard. *See* Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local*

*600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

## LAW AND ANALYSIS

### A. Count One - Arrests without probable cause

In Count One, Plaintiff alleges that the officer Defendants "deprived [him]...of his right to be free from unreasonable searches and seizures in violation of the Fourth and Fourteenth Amendment." (Compl. ¶ 19). His opposition to Defendants' motion for summary judgment clarifies that this claim is based on the officers' alleged lack of probable cause to arrest him in conjunction with their welfare check or for domestic violence.[2] Because the officers do not dispute that they seized Plaintiff,[3] the central question is whether each defendant had probable cause to do so, or arguable probable cause such that he is entitled to qualified immunity. *Bruce v.*

---

[2]     Plaintiff does not address Defendants' argument that his unlawful arrest claim must be analyzed under the Fourth Amendment rather than the Fourteenth Amendment. *See Conn v. Gabbert,* 526 U.S. 286, 293, 119 S. Ct. 1292, 143 L. Ed.2d 399 (1999) ("We have held that where another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of 'substantive due process.' ") (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed.2d 443 (1989)). Defendants are entitled to summary judgment on Count One to the extent that it is based on a violation of the Fourteenth Amendment.

    Nor does Plaintiff address Defendants' argument that exigent circumstances justified the officers' entry into his home without a warrant. For the reasons stated in their opening brief, the individual Defendants are entitled to summary judgment on Count One to the extent that it is based on an unlawful entry and search.

[3]     (*See* Whelan Dep. at 22-23) (testifying that Plaintiff was not free to leave while the officers were investigating the suicide call at his home); (Dolbin Dep. at 62) (testifying that he was handcuffed as he was taken to Miller's cruiser).

    As noted below, however, Plaintiff cites no evidence that Officer Whelan was involved with his arrest for domestic violence.

*Guernsey*, 777 F.3d 872, 875 (6th Cir. 2015).

Qualified immunity shields government officials from actions seeking civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed.2d 396 (1982)). The qualified immunity analysis considers two questions, which can be addressed in either order: first, taking the facts in a light most favorable to the plaintiff, whether the officer violated the plaintiff's constitutional rights; and second, whether that constitutional right was clearly established at the time of the incident. *Smith v. City of Troy*, 874 F.3d 938, 944 (6th Cir. 2017); *Zucker v. City of Farmington Hills*, 643 Fed. Appx. 555, 562 (6th Cir. 2016). In determining whether a right was clearly established, this Court must rely on decisions from the United States Supreme Court, the Sixth Circuit, or the decisions of other circuit courts. *Smith*, 874. F.3d at 944.

Qualified immunity is an affirmative defense. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). The defendant "bears the burden of pleading the defense, but the plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Id*. If more than one officer is involved, the court must consider each officer's entitlement to qualified immunity separately. *Smith*, 874 F.3d at 944. Whether the right alleged to have been violated is clearly established and whether the official reasonably could have believed that his conduct was consistent with that right are questions of law for the court. *Id*. If genuine issues of material fact exist as to whether the

official committed acts that would violate a clearly established right, then summary judgment is inappropriate. *Id.*

Finally, a reviewing court analyzes the event at issue in segments when assessing the reasonableness of an officer's actions. *Morrison v. Board of Trustees of Green Tp.*, 583 F.3d 394, 401 (6th Cir. 2009). Thus, this Court must make a separate qualified immunity determination for each of the grounds that Plaintiff raises for unlawful arrest: his seizure in conjunction with the welfare check and his seizure for domestic violence charges.

1. Arrest in connection with welfare check

"The Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others." *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997). An officer may not restrain an individual's liberty solely on "reasonable suspicion" that an individual suffers from mental illness. *Fisher v. Harden*, 398 F.3d 837, 847 (6th Cir. 2005). Probable cause in the context of a mental health seizure "requires only a 'probability or substantial chance' of dangerous behavior, not an actual showing of such behavior." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 245 n.13 (1983)). Probable cause for a mental health seizure can exist even when the person seized does not actually suffer from a dangerous mental condition. *Id.* A reviewing court must assess the existence of probable cause from the perspective of a reasonable officer on the scene. *Id.*

With respect to the "clearly established" prong of the qualified immunity analysis, the Sixth Circuit in 2005 held that "[it] is clearly established that an officer may not affect a mental health seizure without probable cause." *Fisher*, 398 F.3d at 849. Similarly, in 2010, the court held that "[i]t is certainly clearly established that police violate the Fourth Amendment when

they handcuff people whom they neither suspect of criminal wrongdoing nor believe to be a danger to themselves or others." *McKenna v. Edgell*, 617 F.3d 432, 440 (6th Cir. 2010).

With respect to the "constitutional violation" prong of the analysis, the Court finds that there is a genuine issue of material fact as to whether Whelan and Miller had probable cause to seize Plaintiff for a mental health evaluation. Before addressing the relevant facts, two Sixth Circuit cases involving seizures for the purposes of mental health evaluations shed light on the probable cause standard. In *Monday v. Oullette*, the court found that an officer had probable cause to seize the plaintiff for an evaluation. The officer was responding to a radio dispatch that the plaintiff had telephoned a mental health worker and stated that he was upset over a divorce and had ingested some pills and was drinking alcohol in an effort to commit suicide. When the officer arrived at the plaintiff's home, the plaintiff was drinking alcohol and appeared intoxicated and depressed, and a count of his Xanax pills revealed that at least twenty were missing. 118 F.3d 1099, 1102 (6th Cir. 1997). In contrast, the officers in *Fisher v. Harden* lacked probable cause to seize the plaintiff for a mental health evaluation. They had received a call from a passerby that the plaintiff appeared to be tied to a railroad in a suicide attempt, but when they arrived, he was not tied to the tracks, appeared to be hunting, approached the officers in an ordinary manner, and there was no other evidence that he was a danger. 398 F.3d 837, 843-844; *see also Bailey v. Kennedy*, 349 F.3d 731, 740-41 (4th Cir. 2003) (officers who received 911 call from plaintiff's neighbor that plaintiff was intoxicated and suicidal lacked probable cause to seize him for a mental evaluation where he was eating lunch when officers arrived, was not distraught or crying, no weapons or other suicide preparations were evident, and he denied the suicide reports and asked the officers to leave).

a. <u>Officer Whelan</u>

The officers argue that M.K.'s 911 call provided probable cause to seize Plaintiff for an emergency mental evaluation. The 911 call asserted that Plaintiff was locked in his bedroom and threatening to harm himself with a gun. But when Whelan and the other officers arrived, Plaintiff opened the door and immediately told them that "nothing is wrong. I'm fine." (Whelan Dep. at 15). He was dressed in a tee shirt and shorts; his demeanor was dismissive at first but calm and nice after that; and Whelan did not see any weapons on him. Once Sergeant O'Deens arrived, Plaintiff let Whelan and O'Deens into the house and spoke with them for 35 minutes. While O'Deens and Whelan were speaking with Plaintiff, he did nothing that made Whelan think that he needed a psychiatric evaluation or that he was a danger to himself. (Whelan Dep. at 23). Plaintiff also overheard O'Deens report that he did not believe anything was wrong with Plaintiff. (Dolbin. Dep. at 60). Nor did Whelan have any reason to believe that they were investigating anything other than a man who had threatened suicide or that a crime had been committed. (Whelan Dep. at 19-20).

This case is more like *Fisher* and *Bailey* than *Monday.* The events as Whelan observed them after he arrived at Plaintiff's home did not support the assertion in the 911 report that Plaintiff was suicidal. Without more, and in light of this contradictory evidence, the call alone was insufficient to give Whelan probable cause to detain Plaintiff for an emergency mental evaluation.[4]

---

[4]     Indeed, when asked whether he had probable cause to transport Plaintiff for a psychiatric evaluation, Whelan did not say that he did. Instead, he testified that O'Deens was in communication with Officer Mendise at the station, but Whelan "had no idea what information was being told to the officers [at the] station." (Whelan Dep. at 24).

b. <u>Officer Miller</u>

Similarly, the 911 call was insufficient to give Miller probable cause to seize Plaintiff for a mental health evaluation. Miller's observations were comparable to Whelan's: Plaintiff voluntarily opened the door and was calm when the officers arrived; Plaintiff's outward appearance did not give Miller any reason to believe that Plaintiff was in distress; Miller did not see a weapon on Plaintiff; and he heard Plaintiff telling Whelan that he was unarmed. When asked whether he believed that the officers had probable cause to enter Plaintiff's home, Miller did not testify that they did. Rather, he responded that "at that moment[,] there was reasonable suspicion for that type of call to at least speak with him, and at least make sure he was okay, and not going to harm himself. Not necessarily enter his home, but at least make sure he was okay." (*Id.* at 30-31). Miller agreed that the officers were at Plaintiff's house for the sole purpose of performing a welfare check, not to investigate a crime. (Miller Dep. at 25, 29). Based on Miller's own testimony, a reasonable jury could find that he lacked probable cause to seize Plaintiff for a mental health evaluation. He had no reason to suspect that Plaintiff had committed a crime, and despite the 911 call, his own observations showed that Plaintiff was not a danger to himself or others. Even assuming that he had reasonable suspicion to detain Plaintiff, reasonable suspicion is insufficient.

For these reasons, the individual Defendants are not entitled to summary judgment on Count One to the extent that it is based on Plaintiff's arrest in connection with the welfare check.[5]

---

[5]    The Court recognizes that Plaintiff's seizure in connection with the welfare check was extremely short and may have only resulted in minimal, if any, actual damages. Nevertheless, Defendants are not entitled to summary judgment on this

2. <u>Domestic violence arrest</u>

Plaintiff also argues that the officer Defendants lacked probable cause to arrest him for domestic violence. Defendants assert that the officers are entitled to qualified immunity on this claim.

As an initial matter, it is clearly established that "any arrest without probable cause violates the Fourth Amendment." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003). Probable cause exists if, "at the time of the arrest, the facts and circumstances within [the arresting officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (quotations omitted). A court assesses whether a probability of criminal activity exists under a reasonableness standard based on "an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003) (quotations omitted). "The Fourth amendment does not require that a police officer *know* a crime occurred at the time the officer arrests or searches a suspect.... The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty." *Id.* at 256 (quotations omitted). Whether probable cause exists is a jury question, unless only one reasonable determination is possible. *Id.*

Plaintiff was arrested and later charged with domestic violence under Ohio Revised Code 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm

_____

claim because an individual who has suffered a constitutional violation is entitled to nominal damages, even in the absence of actual injury. *Pagan v. Village of Glendale, Ohio*, 559, F.3d 477, 479 n.1 (6th Cir. 2009).

to a family or household member." Ohio has a preferred arrest policy in domestic violence situations. Where an officer has "reasonable grounds to believe that the offense of domestic violence ... has been committed and reasonable cause to believe that a particular person is guilty of committing the offense, it is the preferred course of action ... that the officer arrest and detain that person." Ohio Rev. Code § 2935.03(B)(3)(b); *see also Thacker*, 328 F.3d at 256.

In the context of domestic violence specifically, the Sixth Circuit has consistently held that a victim's accusation, by itself, is sufficient to create probable cause. *See id.* at 257 ("Gallagher's confession that Thacker had abused her alone is sufficient to establish probable cause."); *Klein v. Long*, 275 F.3d 544, 551-52 (6th Cir. 2001) (explaining that officers need not interview an alleged offender where a victim claims that she was abused if such an interview would, at most, produce an exculpatory denial of wrongdoing); *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (holding that a victim's "accusation that she had been sexually assaulted by the plaintiff, standing alone, was sufficient to establish probable cause"). For example, in *Scott v. City of Bexley*, the Sixth Circuit held that police officers had probable cause to arrest in a domestic violence situation where they relied on a victim's accusation. 11 Fed. Appx. 514, 515 (6th Cir. 2001). The officers responded to a 911 "domestic call" and found Scott on the porch, pounding on the door. In the 911 call, the victim stated that Scott was pounding on her door, that she knew he had access to a gun, and that she feared he might fire the gun or break down her door. *Id.* The police questioned her but not Scott. Solely on the basis of the 911 call and the interview with the victim, the police arrested Scott. The court held that "the undisputed facts support a finding of probable cause." *Id.* at 519.

a. <u>Officer Miller</u>

At the time that Officer Miller was told to bring Plaintiff to the station for booking, the following information had been gathered collectively by the officers involved in the incident. *See Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989) ("Probable cause may be established from the collective knowledge of the police rather than solely from the officer who actually made the arrest."). The previous day, Kathleen and Plaintiff had gotten into an argument. Kathleen told the officers that Plaintiff slapped her across the face, spit in her face, kicked her in the face, pushed her down the stairs, choked her, and put knives in her face. Plaintiff then left the house. Upon his return, Plaintiff displayed the behavior that led M.K. to place the 911 call. M.K. corroborated her mother's story. She told the officers that Plaintiff had been fighting with Kathleen on February 1 and that he kicked and hit her in the face and threw her down the basement stairs.[6] In addition, while at the station, Kathleen was crying "quite a bit" and her nose was red, "[n]ot [in] the same [way] as the rest of her face." (Miller Dep. at 43).

Given the totality of the circumstances, Miller had probable cause to arrest Plaintiff for domestic violence. Indeed, Kathleen's accusations, alone, were sufficient to establish probable cause. But the officers also had a corroborating statement from M.K. and knowledge that Kathleen was visibly distraught and had a red nose. This information, combined with Ohio's

---

[6]     Plaintiff asserts that M.K.'s statement cannot be considered corroborating because she was only 14 years old at the time of the incident and she was placed in an interview room with Kathleen for 45 minutes. In M.K.'s declaration, she states that Kathleen instructed her what to write in her statement about the events on February 1. Plaintiff cites no law supporting his assertion that the statement of a 14 year-old cannot be considered corroborating evidence or that a minor complainant must be separated from a parent complainant when giving her statements to officers.

preferred arrest policy, was sufficient to support a finding of probable cause.

Plaintiff points out that eyewitness testimony does not establish probable cause where "there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection." *Ahlers v. Schebil,* 188 F.3d 365, 370 (6th Cir. 1999) (quotations omitted). He argues that the officers ignored significant exculpatory evidence when they determined that probable cause existed to arrest Plaintiff for domestic violence. Specifically, Officer Miller saw no physical injuries on Kathleen that would corroborate her claim that Plaintiff had assaulted her the previous day. He argues that this lack of any injury, combined with Miller's knowledge about possible divorce proceedings between Plaintiff and Kathleen, necessitated further investigation before a determination of probable cause could be made.

In this case, the only eyewitnesses to the events on February 1 were Plaintiff, Kathleen, and M.K. On the night that Plaintiff was arrested, M.K. corroborated her mother's story of abuse.[7] Thus, the information that the officers had from two of the three eyewitnesses was consistent. While Plaintiff denied their allegations, the officers were "under no obligation to give any credence to a suspect's story ... nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Klein*, 275 F.3d at 552. Moreover, Plaintiff has cited no law that would require an officer to identify visible proof or present concrete evidence of a physical injury to satisfy a

---

[7]     It is irrelevant that M.K. eventually recanted her story. The probable cause determination must be made based on "an examination of all facts and circumstances within an officer's knowledge *at the time of an arrest*." *Thacker*, 328 F.3d 255 (emphasis added).

probable cause determination for a domestic violence arrest. The officer need only reasonably believe that the arrestee "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." Ohio Rev. Code 2919.25(A). In this case, the totality of the circumstances was sufficient to give Miller such a reasonable belief.

For this reason, Miller is entitled to summary judgment on Count One to the extent that it is based on Plaintiff's arrest for domestic violence.

b. Officer Whelan

Plaintiff cites no evidence that Officer Whelan had any involvement with his arrest for domestic violence. Whelan testified that "up until the point that [Plaintiff] was led away from his home, the only thing discussed was a psych evaluation." (Whelan Dep. at 24). Whelan did not have any interaction with Plaintiff after he was placed in Miller's car. (*Id.*) He did not learn that Plaintiff was being charged with domestic violence until after Plaintiff was in Miller's car. (*Id.* at 26). For these reasons, Officer Whelan is entitled to summary judgment on Count One to the extent that it is based on Plaintiff's arrest for domestic violence. Assuming Officer Whelan arrested Plaintiff for domestic violence, he is entitled to summary judgment for the same reasons as Officer Miller.

**B. Count Two - Governmental liability for failure to train**

In Count Two, Plaintiff alleges that the City of Strongsville failed to adequately train and supervise its officers on the proper procedures for searches and seizures, that the failure to train was the proximate cause of his injuries, and that the failure amounted to deliberate indifference to his constitutional rights. Defendants moved for summary judgment on Count Two, and Plaintiff did not respond to this portion of Defendants' motion. Defendants' motion for summary

judgment on Count Two is, therefore, granted as unopposed for the reasons stated in Defendants' opening brief.

### C. Count Three - False imprisonment

In Count Three, Plaintiff brings a false imprisonment claim against Defendants. Defendants move for summary judgment on this claim on the merits, arguing that a false imprisonment claim only applies when a private actor illegally detains another private actor. (Doc. 10, at 22) (citing *Rogers v. Barbera*, 170 Ohio St. 241, 243 (1960) ("In a false imprisonment, the detention is purely a matter between private persons for a private end, and there is no intention of bringing the person detained before a court, or of otherwise securing the administration of the law.")); *see also Vasquez-Palafox v. United States*, No. 3:12 CV 2380, 2013 WL 1500472, at *3 (N.D. Ohio Apr. 10, 2013) (granting summary judgment on Ohio false imprisonment claim against Border Patrol agents because claim was asserted against the agents for actions taken in the course of their law enforcement duties); *Burr v. Burns,* 439 F.Supp.2d 779, 790 (S.D.Ohio 2006) (granting summary judgment on Ohio false imprisonment claim asserted against police officers). Defendants also argued that they are entitled to statutory immunity on the claim. (*See* Doc. 10, at 25-27). Plaintiff only responded to Defendants' immunity argument and did not address their argument on the merits. Because Plaintiff's false imprisonment claim was asserted against Defendants for actions taken in their law enforcement capacity, Defendants are entitled to summary judgment on Count Three.[8]

---

[8]     Plaintiff does not respond to Defendants' argument that the City of Strongsville is entitled to political subdivision immunity under Ohio Revised Code § 2744.02 on all of his state-law claims. For the reasons addressed in Defendants' motion for summary judgment, the city is immune from liability on Plaintiff's state-law claims.

### D. Count Four - State-law malicious prosecution

Plaintiff brings a state-law malicious prosecution claim in Count Four. Defendants move for summary judgment on this claim on the merits, arguing that: (1) probable cause existed for Plaintiff's domestic violence arrest; (2) Plaintiff has provided no evidence that Defendants had any malicious intent in instituting or continuing the prosecution against him, an element of the claim; and (3) the claim is barred by the one-year statute of limitations in Ohio Revised Code § 2305.11(A) because he did not file this lawsuit until more than one year after his cause of action accrued. Finally, they argue that they are entitled to statutory immunity on the claim. Again, Plaintiff only addressed statutory immunity in his response brief; he did not oppose Defendants' argument on the merits or the statute of limitations. Defendants are entitled to summary judgment on Count Four because probable cause existed for Plaintiff's domestic violence arrest, the claim is barred by the applicable statute of limitations, and Plaintiff has cited to no evidence that any of the Defendants acted with any malicious intent.

### E. Count Five - Federal malicious prosecution

In Count Five, Plaintiff brings a federal claim of malicious prosecution against Officer Miller for filing domestic violence charges against him.[9] "The Sixth Circuit recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (internal quotations

---

[9]    Plaintiff's complaint states that this claim is brought against "Defendants," collectively, but his brief in opposition makes clear that the claim is only against Officer Miller. (Doc. 14, at 10) ("Defendant Miller Initiated Criminal Proceedings Against Plaintiff Without Probable Cause in Violation of Plaintiff's Fourth Amendment Rights.").

omitted). To succeed on a malicious prosecution claim when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove: (1) a criminal prosecution against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) lack of probable cause; (3) plaintiff suffered a loss of liberty beyond the initial seizure; and (4) termination of the criminal case in plaintiff's favor. *Id.* at 308-09. Because Miller had probable cause to arrest Plaintiff for domestic violence, Count Five fails.

### F. Counts Six and Seven - Federal and state abuse of process

Finally, Plaintiff brings federal and state claims for abuse of process. An Ohio claim of abuse of process has three elements: (1) a legal proceeding has been set in motion in proper form and with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) direct damage has resulted from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.,* 68 Ohio St.3d 294, 298 (1994). In an abuse of process case, the improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself. *Palivoda v. Felix,* No.2010–A–0017, 2011 WL 4790982, at *4 (Ohio App. 11 Dist. Oct.7, 2011) (citing *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St. 3d 264, 271 (1996). An abuse of process claim "does not lie for the wrongful bringing of an action, but for the improper use, or 'abuse,' of process." *Id.* The Sixth Circuit has not "specifically determined whether a claim for abuse of process is a cognizable constitutional claim that can be redressed pursuant to § 1983." *Garcia v. Thorne*, 520 Fed. Appx. 304, 311 (6th Cir. 2013) (quotations omitted). But it has resolved § 1983 abuse of process claims without deciding whether such a claim is cognizable. *Id.* In doing so, it typically assumes that the elements would mirror those of state law. *Id.*

Defendants argue that Plaintiff's abuse of process claims fail because he alleged in his complaint that Defendants lacked probable clause. Plaintiff did not respond to Defendants' argument.

Defendants' argument ignores that the Federal Rules of Civil Procedure allow a plaintiff to plead claims in the alternative. Fed. R. Civ. P. 8(d)(2). Nevertheless, the Court finds that Defendants are entitled to summary judgment on these claims. Plaintiff points to no evidence in the record–and the Court has found none on its own review–that would show that Defendants perverted the process for an ulterior purpose. Rather, Plaintiff's sole complaint is that Defendants initiated criminal proceedings against him without probable cause and without a proper investigation. An abuse of process claim cannot be supported with such evidence. *See Garcia*, 520 Fed. Appx. at 311 (applying Michigan law and holding that abuse of process claim failed because officer's behavior related to the initiation of criminal proceedings, not the misuse of process).

### **CONCLUSION**

For the foregoing reasons, Defendants Officer Miller, Officer Whelan, and the City of Strongsville's Motion for Summary Judgment Under Fed. R. Civ. P. 56 (Doc. 10) is GRANTED IN PART and DENIED IN PART. The City of Strongsville is entitled to summary judgment on all claims. Officers Miller and Whelan are entitled to summary judgment on all claims except Count One to the extent that it is based on Plaintiff's arrest in connection with the mental health evaluation.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Court
Chief Judge

Dated: 3/1/18